UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WISCONSIN

---

*In re*:

PORFIRIA GUADALUPE VALCQ, Case Number: 25-12761-13

Debtor.

---

PORFIRIA GUADALUPE VALCQ,

Plaintiff,

v. Adversary Number: 26-00007

PORTAGE COUNTY,

Defendant.

---

**DECISION**

On December 23, 2025, Porfiria Guadalupe Valcq ("Plaintiff") filed a voluntary Chapter 13 petition. On February 16, 2026, Plaintiff filed an adversary complaint against Portage County ("Defendant"). Plaintiff asked the Court to set aside a tax deed as a fraudulent transfer of property to the Defendant under 11 U.S.C. § 548. At a hearing on April 21, the parties stipulated there are no material facts in dispute. They agreed the matter could be decided on briefs. The parties then submitted a binding, court-ordered Joint Statement of Uncontested Facts on May 19, 2026.

## STATEMENT OF FACTS

The parties stipulated to and are bound by the facts as stated in the Joint Statement of Uncontested Facts filed on May 19, 2026.[1] Except as noted, the facts as described in this section rely on those binding statements.

Plaintiff owned real estate located at 117 Depot Street, Amherst, Wisconsin ("Property").[2] The Property is valued at $93,400.[3] Plaintiff did not pay property taxes on the Property for tax years 2020 to 2024.[4] The back taxes and unpaid utility bills for this period total $10,850.04.[5] Defendant followed the Wisconsin statutory procedure to take the Property via tax deed.[6]

Five months before Plaintiff filed for bankruptcy, Defendant obtained a tax deed to the Property.[7] Defendant recorded the tax deed a year later, on May 29, 2026.[8]

Contrary to both the Joint Statement of Uncontested Facts,[9] and Defendant's Initial Brief,[10] Defendant's Answer appears to suggest a different recording date. It says the deed was recorded in May 2025.[11]

On June 4, 2025, the Portage County Treasurer ("Treasurer") notified Plaintiff that she could repurchase the Property until September 26, 2025, by

---

[1] *See* Joint Statement of Uncontested Facts, Dkt. No. 10.
[2] *Id.* ¶ 3.
[3] *Id.* ¶¶ 4, 24.
[4] *Id.* ¶ 5.
[5] *Id.* ¶ 6.
[6] *Id.* ¶ 10.
[7] *Id.* ¶ 7.
[8] *Id.* ¶ 9; Portage County's Br. in Opp'n to Adversary Compl., Dkt. No. 11 at 2.
[9] *Id.* ¶ 9.
[10] Dkt. No. 11 at 2.
[11] Defendant Portage County's Resp. to Debtor/Pl.'s Compl. to Set Aside Fraudulent Transfer, Dkt. No. 7 at 2.

paying past due costs and interest totaling $13,852.01.[12] The Treasurer also informed Plaintiff that if a sale occurred, she might be entitled to a share of the proceeds.[13]

Defendant then sent Plaintiff a 28-day notice terminating any tenancy and requiring all people to vacate the Property by October 31, 2025.[14] Plaintiff continues to occupy the Property.[15]

Portage County Ordinance § 3.8.18(2)(i) authorizes the County Board Finance Committee ("Committee") to sell tax deeded lands by open or closed bid or through a real estate broker.[16] "Portage County Ordinance § 3.8.18(2)(j) requires the [Committee] to reject any bid to purchase tax deeded land that is lower than the appraised value on the first attempt to sell the tax deeded land."[17] The Committee must prepare a written statement if it accepts a bid that is less than the tax deeded land's appraised value.[18]

When Portage County sells tax deeded property, both the Portage County Ordinances and Wisconsin Statutes require the County Treasurer to send all sale surplus to the former owner.[19] The former owner is statutorily entitled to proceeds of the sale

> "minus any delinquent taxes, interest, and penalties owed by the former owner to the county in regard to other property and minus the actual costs of the sale as specified under sub. (3)(a) plus all

---

[12] Joint Statement of Uncontested Facts, Dkt. No. 10 ¶ 15.
[13] *Id.* ¶ 12.
[14] *Id.* ¶ 21.
[15] *Id.* ¶ 22.
[16] *Id.* ¶ 25.
[17] *Id.* ¶ 26.
[18] *Id.* ¶ 27 (citing Portage County Ordinance § 3.8.18(2)(j)).
[19] *Id.* ¶ 28; Wis. Stat. § 75.36(2m)(a) (2026).

> amounts disbursed under sub. (3)(b) and plus the amount of property taxes that would have been owed on the property for the year during which the sale occurs if the county had not acquired the property."

Wis. Stat. § 75.36(2m)(a) (2026).

Defendant advertised the Property for sale between November 14, 2025, and December 4, 2025, listing a minimum bid of $93,400.[20] Defendant received no bids "during the first advertisement for sale."[21] Plaintiff filed for bankruptcy on December 23, 2025.

## DISCUSSION

### A. Jurisdiction

This Court has jurisdiction under 28 U.S.C. §§ 1334 and 157. The matter concerns a determination of fraudulent conveyance, so it is a core proceeding under section 157(b)(2)(H). The Court may enter final judgment. 28 U.S.C. § 157(b)(1).

### B. Summary Judgment

Summary judgment is governed by Rule 56(c) of the Federal Rules of Civil Procedure, made applicable to bankruptcy proceedings by Rule 7056 of the Federal Rules of Bankruptcy Procedure. "Under Rule 56(c), summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled

---

[20] Joint Statement of Uncontested Facts, Dkt. No. 10 ¶¶ 30, 31.
[21] *Id.* ¶ 34.

to judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56).

The parties agree that there are no material facts in dispute. They submitted stipulated facts. Based on those uncontested facts, the Court may enter a final decision.

## C. Recording the Tax Deed, Redemption, and the Automatic Stay

Wisconsin Statute § 75.01(1)(b) states that "[a]ny person, prior to the recording of a tax deed . . . may redeem the land [and] . . . [i]f there is a redemption before the recording, the tax deed as it relates to the land redeemed, shall be void." Wis. Stat. § 75.01(1)(b) (2026).

On December 23, 2025, Plaintiff filed for bankruptcy and an automatic stay went into effect. Defendant recorded the tax deed in May 2026 according to the stipulated facts. Based on those stipulated and uncontested facts, the tax deed was not recorded before the Petition Date and the automatic stay commenced. Plaintiff's right to redeem is tolled, and Plaintiff's ownership interest in the Property is unaffected by the now recorded deed. So the recording occurred post-petition and violated the stay.

Although the undisputed Joint Statement of Uncontested Facts, supported by Defendant's Initial Brief, states that the deed was recorded on May 29, 2026, Defendant's Answer to the Complaint suggests, without explanation, that the deed was recorded in 2025. In the event the deed was recorded in 2025, Wisconsin Statute § 75.01(1)(b) would not apply and the

Court must then resolve the question of avoidability under 11 U.S.C. § 548(a)(1)(B).

**D. <u>Section 548(a)(1)(B) Avoidability Analysis</u>**

If the deed was recorded on May 29, 2025, the recording would have occurred 208 days before this bankruptcy was filed. The transfer may therefore be avoidable as a fraudulent transfer under section 548(a)(1)(B). Section 548(a)(1)(B) says:

> (a)(1) The trustee may avoid any transfer . . . of an interest of the debtor in property . . . that was made or incurred on or within 2 years before the date of filing the petition, if the debtor voluntarily or involuntarily–
>
> > (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
> >
> > (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation[.]

1. *<u>Plaintiff was rendered insolvent by the transfer</u>.*

Section 548(a)(1)(B) requires that the debtor be insolvent at the time of the transfer "or [become] insolvent as a result of such transfer." 11 U.S.C. § 101(32) defines "insolvent" as a "financial condition such that the sum of such entity's debts is greater than all of such entity's property."

The Bankruptcy Schedules list Plaintiff's assets as $132,429.87 and Plaintiff's liabilities as $75,562.90. However, these numbers do not tell the full story.

The above values include the Property, listed in the Schedules at $93,400 in value, and the tax debt owned by Defendant and secured by the Property,

listed in the Schedules at $15,000 in value. At first glance, these additional amounts obscure the impact the transfer had on the Plaintiff's insolvency.

If the Property was transferred, then the proper inquiry was the effect of that transfer on the solvency of the Plaintiff. The Property would not have been property of the estate on the petition date, so it must be deducted from the value of the assets, decreasing the assets. The tax debt would have been paid by the transfer, so it would also need to be deducted from the amount of the liabilities, thereby reducing the liabilities. The result would be:

| | Assets | Liabilities | Solvency Calculation |
|---|---|---|---|
| Scheduled before the transfer | +$132,429.87 | -$75,562.90 | +$56,866.97 |
| Adjustments based on transfer | – $93,400 | + $15,000 | |
| Assets v Liabilities after transfer | +$39,029.87 | -$60,562.90 | -$21,533.03 |

If, as Defendant suggests, the Property was transferred to it before the bankruptcy, Plaintiff's financial condition was "such that the sum of [the Plaintiff's] debts [were] greater than all of [the Plaintiff's] property." *See id.* The transfer thus rendered the Plaintiff insolvent.

2. *The Transfer Occurred Within Two Years of the Bankruptcy*.

Section 548(a)(1)(B) only applies to transfers "made or incurred on or within 2 years before the date of the filing of the petition." 11 U.S.C. § 548(b). Plaintiff filed for bankruptcy on December 23, 2025. If the deed was recorded

in May 2025, the transfer occurred in the same year as the bankruptcy filing and well within the requirements of section 548(a)(1)(B).

If the deed was recorded in 2026, as stipulated to in the undisputed Joint Statement of Uncontested Facts, the automatic stay would have prevented a transfer altogether. And that was within one year, so in either case this element is satisfied.

3. *Reasonably Equivalent Value Was Not Received.*

The final element to consider is whether the Plaintiff "received less than a reasonably equivalent value in exchange for [the] transfer." 11 U.S.C. § 548(a)(1)(B). The Seventh Circuit admonishes that "to determine reasonably equivalent value in the context of a fraudulent conveyance requires the court to determine the value of what was transferred and to compare it to what was *received*." *Barber v. Golden Seed Co.*, 129 F.3d 382, 387 (7th Cir. 1997) (emphasis added).

The dispute, therefore, turns on the meaning of the word "received." The plain meaning rule dictates that where the meaning of relevant statutory language is clear, no further inquiry is required. *In re Philadelphia Newspapers, LLC*, 418 B.R. 548, 559 (Bankr. E.D. Pa. 2009). The Court must determine "whether the language at issue has a plain and unambiguous meaning." *Dobrek v. Phelan*, 419 F.3d 259, 263 (3d Cir. 2005). To be ambiguous, the disputed language must be "reasonably susceptible of different interpretations." *Id.* at 264. If no ambiguity exists, the plain meaning of the text

is conclusive and the inquiry ends. *Lawrence v. City of Phila.*, 527 F.3d 299, 316-17 (3d Cir. 2008).

Here, the word "received" has a plain and unambiguous meaning. "Received" is ordinarily known to be the past tense form of the verb "to receive," meaning "to come into possession of" or to "acquire."[22] The word "received" is not reasonably susceptible to different interpretations. The plain meaning of the text is conclusive. The Court must consider what "[came] into possession of" the Plaintiff in exchange for the transfer.

Defendant says it received the Property, and there is some future expectancy that Plaintiff will receive something. Yet as of today, Plaintiff has received nothing. There has been no value received by Plaintiff in exchange for the transfer of the Property. Defendant acknowledges this by arguing that there will be something, in an undetermined amount, at some point in the future.

Defendant argues that receipt of an unknown amount at an undetermined future time constitutes reasonably equivalent value. Defendant does so, arguing that when the Property is sold any proceeds in excess of the amount owed will be returned to the Plaintiff.

In support, Defendant relies on *BFP v. Resolution Trust Corp.*, 511 U.S. 531 (1994). In *BFP*, the Supreme Court was asked to determine whether the final sale price of a completed foreclosure sale amounted to reasonably equivalent value under section 548. *Id.* at 534. The Court found that the

---

[22] "Receive," Merriam-Webster.com, https://www.merriam-webster.com/dictionary/receive (last visited Sept. 9, 2026).

"'reasonably equivalent value,' for foreclosed property, is *the price in fact received at the . . . sale*." *Id.* at 546 (emphasis added).

The current case is distinguishable from *BFP*. In *BFP,* there was a fixed and known value determined at the time of an actual sale and an amount received. Unlike in *BFP*, there has been no sale. There is no ascertained "price in fact received at the . . . sale." *Id.* No money has been exchanged at all. No proceeds have been paid to Plaintiff. There is no known sale price or any idea when a sale may occur.

Defendant suggests the Court ignore this difference and find that an unliquidated right to the undetermined amount of a possible sale surplus of an unscheduled sale is somehow the same as actually receiving a reasonably equivalent value of the Property in the transfer. In other words, Defendant asks the Court to find something to be "unreal, but true." *Arena: The Orson Welles Story* (BBC 1982).

But that unliquidated "right" sometime in the future does not establish an actual value. There is no value for the Court to consider. And the nebulous nature instead confirms that Plaintiff has not received any value for the transfer. Thus, the Plaintiff received less than the reasonably equivalent value of the Property in exchange for the transfer. The transfer is avoidable.

**CONCLUSION**

As stipulated and later confirmed by Defendant, Defendant failed to record the tax deed prior to the bankruptcy filing. For that reason, the

automatic stay applies, the redemption period is tolled, and the ownership interest in the property remains with Plaintiff.

Even if Defendant recorded the tax deed in May 2025—before the bankruptcy filing—the transfer occurred within two years of the bankruptcy filing. The Plaintiff was rendered insolvent. The Plaintiff did not receive the reasonably equivalent value of the Property at the time of the transfer. Whether or not there was a transfer pursuant to a timely recorded tax deed, the transfer is voidable under 11 U.S.C. § 548(a)(1)(B).

The Court denies summary judgment to Defendant and grants summary judgment to Plaintiff setting aside the transfer of ownership in the Property to Defendant.

This decision constitutes findings of fact and conclusions of law under Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

A separate order and judgment consistent with this decision will be entered.

Dated: October 2, 2026

BY THE COURT:

Hon. Catherine J. Furay
U.S. Bankruptcy Judge